UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| EQUIPMENT LEASING, LLC | CIVIL ACTION |
| VERSUS | NO: 10-2628 |
| THREE DEUCES, INC., *in personam* and, BARGE "CGB-68017", her tuggers, generator, crane boom rest, etc., *in rem* | SECTION R |

**ORDER AND REASONS**

In this admiralty action, plaintiff moves for summary judgment on the grounds that it is the legal title holder and rightful owner of Barge CGB-68017.[1] Because the Court finds no material fact issues exist regarding plaintiff's title and ownership of the barge, the Court GRANTS plaintiff's motion for summary judgment.

**I. Background**

On August 10, 2010, plaintiff Equipment Leasing, LLC sued defendant Interstate Truck and Equipment, Inc. (incorrectly identified as Three Deuces, Inc.), *in personam*, and Barge CGB-68017, *in rem*, after Interstate Truck allegedly took possession of Barge CGB-68017 without plaintiff's permission or consent.[2] On November 2, 2006, CDP West, LLC paid a $2000 deposit to

---

[1] R. Doc. 31.

[2] R. Doc. 1.

Matthews Marine on a "CG Barge" with a sale price of $125,000.[3] On November 21, 2006, Matthews Marine and Equipment Leasing entered into a contract of sale for Barge CGB-68017 in which Equipment Leasing agreed to purchase the barge for $125,000.[4] At the same time, Equipment Leasing purchased two additional vessels from Matthews Marine; Barge "Terry Lee" for a purchase price of $25,000 and Tug Boat "Baby Girl" for a purchase price of $155,000.[5] Cahaba Disaster Recovery, LLC paid Matthews Marine $303,000 for the vessels on behalf of Equipment Leasing.[6] Equipment Leasing repaid the $303,000 to Cahaba on January 22, 2007.[7] Equipment Leasing employees testified that Equipment Leasing has never sold or transferred Barge CGB-68017 to any entity or individual.[8]

Interstate Truck contends, however, that on October 14, 2009, third-party defendant Taylor Auction & Realty, Inc. sold Barge CGB-68017 at the "CDP Corp Inc. Bankruptcy Auction" to J.A.H Enterprises, Inc., d/b/a Henderson Auctions.[9] Interstate

---

[3]  R. Doc. 31-7, Ex. F.

[4]  R. Doc. 31-2, Ex. A.

[5]  R. Doc. 31-3, Ex. B; R. Doc. 31-4, Ex. C.

[6]  R. Doc. 31-5, Ex. D.

[7]  R. Doc. 31-6, Ex. E.

[8]  R. Doc. 31-9, Ex. H; R. Doc. 31-10, Ex. I.

[9]  R. Doc. 31-13, Ex. L.

Truck maintains that it purchased the barge from Henderson Auctions on December 14, 2009.[10]  Interstate Truck therefore asserts it is the rightful owner of Barge CGB-68017.

On August 10, 2010, Equipment Leasing filed this petitory and possessory suit to try title to Barge CGB-68017.[11]  Pursuant to Rule D of the Supplemental Rules for Admiralty or Maritime Claims, plaintiff seeks to be recognized as the legal title holder of the barge and seeks to be placed in possession of the barge.[12]  At a March 10, 2011 settlement conference, the parties reached an agreement for the release and return of the vessel to the plaintiff while reserving their rights to the merits of the claims.[13]

Equipment Leasing now moves for summary judgment requesting entry of judgment recognizing it as the legal title holder and rightful owner of Barge CGB-68017.[14]  The present motion initially was set for submission on March 2, 2011.  On March 24, 2011, Interstate Truck filed a motion to continue hearing on plaintiff's motion for summary judgment.[15]  The Court granted

---

[10]  R. Doc. 31-11, Ex. J.

[11]  R. Doc. 1.

[12]  *Id.* at 4.

[13]  R. Doc. 43.

[14]  R. Doc. 31.

[15]  R. Doc. 45.

defendant's motion and continued the submission date until June 30, 2011.[16] On June 28, 2011, Interstate Truck filed a counterclaim alleging it is the rightful owner of Barge CGB-68017.[17] Interstate Truck has not, however, supplemented its opposition to plaintiff's motion for summary judgment or requested an additional extension of the submission date. The Court, therefore, will rule on plaintiff's motion for summary judgment at this time.

## II.  Legal Standard

Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c)(2); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). When assessing whether a dispute as to any material fact exists, the Court considers "all of the evidence in the record but refrains from making credibility determinations or weighing the evidence." *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398 (5th Cir. 2008). All reasonable inferences are drawn in favor of the

---

[16]  R. Doc. 50.

[17]  R. Doc. 56.

4

nonmoving party, but "unsupported allegations or affidavits setting forth 'ultimate or conclusory facts and conclusions of law' are insufficient to either support or defeat a motion for summary judgment." *Galindo v. Precision Am. Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985); *Little*, 37 F.3d at 1075.

If the dispositive issue is one on which the moving party will bear the burden of proof at trial, the moving party "must come forward with evidence which would 'entitle it to a directed verdict if the evidence went uncontroverted at trial.'" *Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1263-64 (5th Cir. 1991). The nonmoving party can then defeat the motion by either countering with sufficient evidence of its own, or "showing that the moving party's evidence is so sheer that it may not persuade the reasonable fact-finder to return a verdict in favor of the moving party." *Id.* at 1265.

If the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its burden by merely pointing out that the evidence in the record is insufficient with respect to an essential element of the nonmoving party's claim. *See Celotex*, 477 U.S. at 325. The burden then shifts to the nonmoving party, who must, by submitting or referring to evidence, set out specific facts showing that a genuine issue exists. *See id.* at 324. The nonmovant may not rest upon the pleadings, but must identify

specific facts that establish a genuine issue for trial. *See, e.g., id.* at 325; *Little*, 37 F.3d at 1075; *Isquith ex rel. Isquith v. Middle South Utils., Inc.*, 847 F.2d 186, 198 (5th Cir. 1988), *cert. denied*, 488 U.S. 926 (1988).

### III. Analysis

#### A) *Jurisdiction*

The Court has jurisdiction over this action pursuant to 28 U.S.C. § 1333 and Rule 9(h) of the Federal Rules of Civil Procedure. A suit to try title to or possession of a vessel wrongfully taken is within the admiralty jurisdiction of federal courts. *See Ward v. Peck*, 59 U.S. (18 How.) 267 (1855) (stating that courts sitting in admiralty have jurisdiction over petitory actions to try title to vessels); *Gulf Coast Shell & Aggregate LP v. Newlin*, 623 F.3d 235, 239 (5th Cir. 2010) (quoting *Gallagher v. Unenrolled Motor Vessel River Queen*, 475 F.2d 117, 119 (5th Cir. 1973)) ("Admiralty has jurisdiction in a possessory suit by the legal owner of a vessel who has been wrongfully deprived of possession."). A petitory action to try title under Rule D "requires a plaintiff to assert a legal title to the vessel; mere assertion of an equitable interest is insufficient." *Gulf Coast*, 623 F.3d at 239 (quoting *Silver v. Sloop Silver Cloud*, 259 F. Supp. 187, 191 (S.D.N.Y. 1966)). Similarly, a party seeking possession under Rule D "must have legal title or a legal claim

to possession." *Gulf Coast*, 623 F.3d at 239 (quoting *Carey Marine, Inc. v. M/V Papillon*, 701 F. Supp. 604, 606 (N.D. Ohio 1988), *aff'd* 872 F.2d 751 (6th Cir. 1989)). Here, both Equipment Leasing and Interstate Truck contend they have legal title to Barge CGB-68017. Accordingly, the Court has admiralty jurisdiction over the Rule D claims for possession and to try title to the barge.

### B) Equipment Leasing's Title to Barge CGB-68017

Whether the transaction between Matthews Marine and Equipment Leasing gave Equipment Leasing legal title to Barge CGB-68017 depends on whether a "sale" occurred. *See Jones v. One Fifty Foot Gulfstar Motor Sailing Yacht*, 625 F.2d 44, 47 (5th Cir. 1980) ("[A] determination of appellant's legal title will necessarily depend upon whether or not a sale of the vessel . . . occurred."). "The question of ownership of a vessel is ordinarily governed by state law." *See St. Paul Fire & Marine Ins. Co. v. Vest Transp. Co.*, 666 F. 2d 932, 938 (5th Cir. 1982). Here, the parties' agreement provides that Alabama law applies to this transaction.[18]

The barge constitutes goods within the meaning of Alabama's Commercial Code. *See Jones*, 625 F.2d at 47 (finding the vessel

---

[18] R. Doc. 31-2, Ex. A ("This Contract . . . shall be construed in accordance with the law of Alabama.").

involved was "goods" within the meaning of the UCC). Under Alabama law, "[a] contract for sale of goods may be made in any manner sufficient to show agreement, including conduct by both parties which recognizes the existence of such a contract." Ala. Code § 7-2-204 (1975).

Equipment Leasing and Matthews Marine entered a contract of sale for Barge CGB-68017 on November 21, 2006.[19] Cahaba, on behalf of Equipment Leasing, paid Matthews Marine $303,000 for three vessels including the barge in issue.[20] Erika Hunt, an Equipment Leasing employee, testified that the contract of sale is the original contract transferring ownership of Barge CGB-68017 to Equipment Leasing.[21] The Court finds that Equipment Leasing has established a contract for sale of the barge.

Having found that there existed a contract for sale, the Court must next consider whether legal title passed to Equipment Leasing. Under the Alabama Commercial Code, "title to goods passes from the seller to the buyer in any manner and on any conditions explicitly agreed on by the parties." Ala. Code § 7-2-401(1). In cases when the agreement is silent as to when legal title shall pass and delivery is to be made without moving the goods,

---

[19] *Id.*

[20] R. Doc. 31-5, Ex. D.

[21] R. Doc. 31-10, Ex. I.

> (a) If the seller is to deliver a tangible document of title, title passes at the time when and the place where he delivers such document . . .; or
>
> (b) If the goods are at the time of contracting already identified and no documents are to be delivered, title passes at the time and place of contracting.

*Id.* § 7-2-401(3).  Section 7-1-201(16) defines document of title:

> "Document of title" includes bill of lading, dock warrant, dock receipt, warehouse receipt or order for the delivery of goods, and also any other document which in the regular course of business or financing is treated as adequately evidencing that the person in possession of it is entitled to receive, hold, and dispose of the document and the goods it covers.  To be a document of title, a document must purport to be issued by or addressed to a bailee and purport to cover goods in the bailee's possession which are either identified or are fungible portions of an identified mass.

*Id.* § 7-1-201(16).

The contract for sale of Barge CGB-68017 is silent as to when legal title to the barge would pass from Matthews Marine to Equipment Leasing.  The contract provides, however, that Equipment Leasing was purchasing Barge CGB-68017 "as is, where is."[22]  Delivery was to be made therefore without moving the goods and the passing of title is governed by section 7-2-401(3) of the Alabama Commercial Code.  *See Puamier v. Barge BT 1793*, 395 F. Supp. 1019, 1029 (E.D. Va. 1974) (applying subsection three under Florida's equivalent statute because the barges were to be delivered where they were moored).

---

[22]   R. Doc. 31-2, Ex. A.

The contract further provides that seller would deliver to buyer a United States Coast Guard bill of sale but the delivery terms for the document were left incomplete. Specifically, clause two of the contract states:

> Seller warrants title to the Barge, which will be delivered to Buyer free of all liens and encumbrances, together with a properly executed United States Coast Guard form of Bill of Sale. Delivery will be at    .[23]

Although the contract requires seller to provide a Coast Guard bill of sale, a bill of sale is not a "document of title." *See In re Callahan*, No. 07-10070, 2007 WL 3018946, at *6 (Bankr. N.D. Ok. Oct. 11, 2007) (citing *In re Gull Air, Inc.*, 73 B.R. 820, 824 (Bankr. D. Mass. 1987) ("A bill of sale is not a 'document of title' under Section 2-401(3), [therefore] [t]he Defendant's failure to deliver a bill of sale to the Debtors did not prevent the Debtors from obtaining title to the inventory."); *In re E.Spire Commc'ns, Inc.*, 284 B.R. 534, 539-40 (Bankr. D. Del. 2002) (holding a bill of sale is not a "document of title" as defined under the UCC and therefore section 2-401(3)(a) did not apply in determining title); *c.f. Jones*, 625 F.2d at 48-49 (holding that a document necessary for federal registration of a vessel was not a "document of title"). Because transfer of title was not contingent upon delivery of a "document of title," title transferred under section 7-2-401(3)(b) at the time of

---

[23]   *Id.*

contracting on November 21, 2006. *See Jones*, 625 F.2d at 49 (holding title transferred to retail purchaser of a vessel at the time of contracting pursuant to section 2-401(3)(b) because the sale was not contingent upon delivery of a "document of title"); *Watkins v. Kennedy Ship & Repair, L.P.*, No. 06-00388, 2008 WL 7628241, at *6 (S.D. Tex. Apr. 24, 2008) ("This section therefore establishes a default rule for cases such as this one, where the agreement is silent as to when legal title shall pass, where delivery is to be made without moving the goods, and where no provision is made for the delivery of a document of title: if the goods are identified to the parties at the time of contracting, then title passes immediately.").

Interstate Truck argues that Equipment Leasing has failed to produce the "title" to the barge, and the barge is not registered with the U.S. Coast Guard. Courts consistently have held that documents filed with the Coast Guard are not determinative of ownership. *See Chase Manhattan Fin. Servs. v. McMillian*, 896 F.2d 452, 460 (10th Cir. 1990) ("[T]he builder's certificate is *prima facie*, but not conclusive, evidence of title because it is part of the paperwork required by the Coast Guard for the certificate of documentation process); *St. Paul Fire & Marine Ins. Co.*, 666 F. 2d at 938 ("We agree that a ship's documentation of title, while *prima facie* evidence of ownership, is not conclusive and that true ownership of a vessel is not dependent

11

upon its registry."); *Benetic v. Alexander*, No. 00-06845, 2001 WL 1843781, at *4 (C.D. Cal. Aug. 13, 2001) (stating that a bill of sale filed with the Coast Guard does not determine who owns a vessel).

Interstate Truck also argues that CDP West paid a $2000 deposit on the barge on November 2, 2006, before Matthews Marine contracted with Equipment Leasing.[24] Interstate Truck has presented no evidence, however, that the document presented was intended to transfer title to CDP West. Further, Interstate Truck has presented no evidence that title transferred from Matthews Marine to CDP West at any other time before the November 21, 2006 contract for sale between Matthews Marine and Equipment Leasing. Accordingly, the Court holds that CDP West's $2000 deposit did not prevent Equipment Leasing from obtaining valid title to the barge from Matthews Marine.

### C) CDP Corporation's Bankruptcy Estate

Interstate Truck argues that it obtained valid title to the barge from Henderson Auctions because Henderson Auctions obtained the barge at CDP Corporation's bankruptcy sale held by Taylor Auction. The Court finds, however, that Interstate Truck has failed to present evidence to create a genuine issue of material

---

[24] R. Doc. 31-7, Ex. F.

fact as to whether CDP Corporation ever held valid title to the barge.

As discussed above, the Court finds that on November 21, 2006, Equipment Leasing acquired title to the barge.  Equipment Leasing has presented the affidavits of two employees testifying that Equipment Leasing has never sold or transferred the barge to CDP Corporation or any other entity or individual.[25]

In an effort to rebut Equipment Leasing's affidavits, Interstate Truck first notes that CDP West and CDP Corporation have an employee in common.  Specifically, Interstate Truck has presented evidence that Lisa Parker is a manager of CDP West and the president of CDP Corporation.[26]  Interstate Truck also emphasizes that CDP West and CDP Corporation have the same registered office address.  The Court finds these facts immaterial to the present motion for summary judgment because Interstate Truck has presented no evidence that CDP West acquired any ownership interest in the barge through its $2000 deposit.

Defendant also argues that "[t]here obviously is or has been some sort of relationship between the plaintiff, Cahaba and CDP."[27]  Defendant initially points to evidence that Cahaba and

---

[25] R. Doc. 31-9, Ex. H; R. Doc. 31-10, Ex. I.

[26] R. Doc. 37-1, Ex. 1; R. Doc. 37-2, Ex. 2.

[27] R. Doc. 37 at 4.

Equipment Leasing share the same address.[28]  Interstate Truck then relies on a settlement agreement between Cahaba and CDP Corporation reserving "any and all rights, claims and defenses, if any, related or pertaining to the personal property identified as one "SPUD BARGE 'CGB-68017,' 68X26X7."[29]  Defendant asserts that the barge described in the settlement agreement is the same barge described in CDP Corporation's bankruptcy auction.  The Court finds that the alleged relationship between plaintiff, Cahaba and CDP Corporation fails to create a material fact issue regarding title to the barge.  Although Cahaba financed Equipment Leasing's purchase of Barge CGB-68017, there is no evidence that Cahaba obtained any ownership rights in the barge.  Equipment Leasing is listed as the only buyer in the contract with Matthews Marine.[30]  Further, Equipment Leasing has presented evidence that on January 22, 2007, it repaid $303,000 to Cahaba for the purchased vessels.[31]  Additionally, Interstate Truck has presented no evidence that Cahaba transferred any alleged interest in the barge to CDP Corporation.  Although the reservation of rights provision states that the parties were retaining "any and all rights, claims and defenses, if any" in

---

[28]   R. Doc. 31-5, Ex. D; R. Doc. 31-6, Ex. E.

[29]   R. Doc. 37-3, Ex. 3 at 6.

[30]   R. Doc. 31-2, Ex. A.

[31]   R. Doc. 31-6, Ex. E.

the barge, the Court finds that Interstate Truck has failed to present any evidence that Cahaba or CDP Corporation held ownership rights in the barge.

Defendant further argues that the photograph from CDP Corporation's bankruptcy auction held by Taylor Auction is "remarkably similar, if not identical" to photographs plaintiff has produced of Barge CGB-68017. The listing from the auction describes the barge as a "Poseidon Spud Barge 24 X 73 X 8."[32] Similarly, both the invoice from Taylor Auction to Henderson Auctions and from Henderson Auctions to Interstate Truck describe the barge with dimensions of 24 X 73 X 8.[33] The survey report for Barge CGB-68017, however, neither describes the barge as a "Poseidon" barge or provides dimensions that correspond to those from the auctions.[34] The Court finds that defendant's mere assertion that the photograph from the bankruptcy auction is "remarkably similar, if not identical" to those of the barge in dispute is insufficient, especially in light of the description of the barge, to create a material fact issue that CDP Corporation held valid title to the barge. Defendant therefore has failed to present evidence that CDP Corporation could convey title to Henderson Auctions. *See* 11 U.S.C. § 541 (describing

---

[32] R. Doc. 37-4, Ex. 4.

[33] R. Doc. 31-13, Ex. L; R. Doc. 31-11, Ex. J.

[34] R. Doc. 31-14, Ex. M.

"property of the estate" as "all legal or equitable interests of the debtor in property as of the commencement of the case."); *In re Louisiana World Exposition,* Inc., 832 F.2d 1391, 1399 (5th Cir. 1987) (noting that although the scope of "property of the estate" is very broad, "the estate's legal and equitable interests in property rise no higher than those of the debtor"); *cf. Hozie v. The Vessel Highland Light*, 182 F.3d 925, 1999 WL 313650, at *1 (9th Cir. 1999) (holding third party could not convey title to defendant because the third party did not have title to the ship).  Because defendant has presented no evidence that Barge CGB-68017 was part of CDP Corporation's bankruptcy estate, defendant has failed to show it obtained any interest in the vessel resulting from its transaction with Henderson Auctions.  Further, Interstate Truck has failed to present evidence creating a material fact issue to rebut Equipment Leasing's title to the barge.  Accordingly, the Court holds that Equipment Leasing is the legal title holder and rightful owner of Barge CGB-68017.

**IV. Conclusion**

For the foregoing reasons, the Court GRANTS plaintiff's motion for summary judgment.

New Orleans, Louisiana, this ___28th___ day of July, 2011.

_____
*Sarah Vance*

SARAH S. VANCE

UNITED STATES DISTRICT JUDGE